UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KIM LORRAINE MORIN,

    Plaintiff,                                  Civil Action No. 16-CV-13264

vs.

                                            HON. BERNARD A. FRIEDMAN

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/

**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND REMANDING FOR FURTHER PROCEEDINGS**

This matter is presently before the Court on cross motions for summary judgment [docket entries 9 and 16]. Pursuant to E.D. Mich. LR 7.1(f)(2), the Court shall decide these motions without a hearing. For the reasons stated below, the Court shall grant plaintiff's motion, deny defendant's motion, and remand the case for further proceedings.

Plaintiff has brought this action under 42 U.S.C. § 405(g) to challenge defendant's final decision denying her application for Social Security disability insurance and Supplemental Security Income ("SSI") benefits. An Administrative Law Judge ("ALJ") held a hearing in May 2015 (Tr. 30-75) and issued a decision denying benefits in July 2015 (Tr. 12-24). This became defendant's final decision in July 2016 when the Appeals Council denied plaintiff's request for review (Tr. 1-3).

Under § 405(g), the issue before the Court is whether the ALJ's decision is supported by substantial evidence. As the Sixth Circuit has explained, the Court

    must affirm the Commissioner's findings if they are supported by

substantial evidence and the Commissioner employed the proper legal standard. *White*, 572 F.3d at 281 (citing 42 U.S.C. § 405(g)); *Elam ex rel. Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (internal quotation marks omitted); see also *Kyle*, 609 F.3d at 854 (quoting *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 604 (6th Cir. 2009)). Where the Commissioner's decision is supported by substantial evidence, it must be upheld even if the record might support a contrary conclusion. *Smith v. Sec'y of Health & Human Servs.*, 893 F.2d 106, 108 (6th Cir. 1989). However, a substantiality of evidence evaluation does not permit a selective reading of the record. "Substantiality of the evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (internal citations and quotation marks omitted).

*Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 640-41 (6th Cir. 2013).

At the time of her May 2015 hearing, plaintiff was 53 years old (Tr. 37). She has an eleventh grade education (Tr. 234) and relevant work experience as a cashier, stock person, and store assistant manager (Tr. 39-41, 218, 235). Plaintiff claims she has been disabled since February 2013 (Tr. 202) due to diabetes, depression, sleep apnea, neuropathy, restless leg syndrome, arthritis in her knees, inability to sit or stand for long, numbness and pain in her feet and legs, blacking out, and difficulty with her legs (Tr. 233).

The ALJ found that plaintiff's severe impairments are "obesity, peripheral neuropathy, diabetes mellitus, chronic obstructive pulmonary disease, and affective disorder" (Tr. 14). He also found that plaintiff's bilateral carpal tunnel syndrome is non-severe and that her fibromyalgia and restless leg syndrome are "non-medically determinable impairments" (Tr. 14-

2

15). Further, the ALJ found that plaintiff cannot perform any of her past work (Tr. 22) but that she has the residual functional capacity ("RFC") to perform a limited range of light work.[1] A vocational expert ("VE") testified initially in response to a hypothetical question that a person of plaintiff's age, education, and work experience, and who has this RFC, could perform certain unskilled, light-level jobs as electrical assembler, small parts assembler, or inspector/hand packager (Tr. 64). When questioned further, however, the VE stated that if the hypothetical worker needed to use an assistive device, such as a walker, at all times while standing, then he/she would have to do these jobs entirely while sitting (Tr. 70, 73). Although the ALJ found that plaintiff "is limited to performing jobs where an individual can use a handheld assistive device at all times when standing," and the VE testified that this limitation would restrict the worker to sedentary jobs, the ALJ nonetheless concluded that plaintiff is not disabled because she could perform the light-level jobs identified by the VE (Tr. 23-24).

---

[1] Specifically, the ALJ found that plaintiff has the RFC

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can never crawl, or climb ladders, ropes, or scaffolds, and can only occasionally stoop, kneel, crouch, or climb ramps or stairs. She is able to occasionally balance with the use of a handheld assistive device, and she must avoid all exposure to unguarded moving mechanical parts and unprotected heights. The claimant is limited to performing jobs where an individual can use a handheld assistive device at all times when standing. She is limited to performing simple, routine, repetitive tasks, and cannot perform work at a production rate pace.

(Tr. 17.) Sections 404.1567(b) and 416.967(b) define light work as "involv[ing] lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."

Having reviewed the administrative record and the parties' briefs, the Court concludes that the ALJ's decision in this matter is not supported by substantial evidence because his RFC evaluation of plaintiff is flawed. Since the hypothetical question incorporated this flawed RFC evaluation, it failed to describe plaintiff in all relevant respects and the VE's testimony given in response thereto cannot be used to carry defendant's burden to prove the existence of a significant number of jobs plaintiff is capable of performing. The ALJ also erred in finding that plaintiff is not disabled based on the existence of jobs which, according to the VE, appear to exceed plaintiff's RFC.

The ALJ's RFC assessment of plaintiff is flawed for the following reasons. First, the ALJ failed to consider the side effects of plaintiff's medications. The record indicates that plaintiff takes, or at various times has taken, a number of medications for pain, diabetes, depression, and other ailments, including atorvastatin calcium, crestor, bagapentin, glyburide, lantus injections, lyrica, metformin, effexor, lasix, citalopram, furosemide, aspir, meloxicam, sertraline, zoloft, venlafaxine, buspar, and buspirone (Tr. 44, 236, 273, 316, 372-73, 508, 744-47, 871, 889, 897, 910, 920). Plaintiff told one of her treating physicians, Dr. Jawed, that one of her pain medications – of which she takes nine pills per day (Tr. 44, 897) – makes her feel "goofy" (Tr. 371). Plaintiff's psychotherapist reported that plaintiff experiences medication side effects of fatigue, lethargy, and confusion (Tr. 586). Another treating physician, Dr. Hanna, reported that one of plaintiff's depression medications "caused side effects with increased fatigue and tiredness and excessive sleep" (Tr. 895, 897). Plaintiff testified that she "sleep[s] a lot" (Tr. 49).

The ALJ clearly erred in failing to make any findings regarding plaintiff's medication side effects. The Sixth Circuit has held that the ALJ must evaluate "[t]he type, dosage,

4

effectiveness, and side effects of any medication" as part of the process of determining the extent to which side effects impair a claimant's capacity to work. *Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 532 (6th Cir. 2014) (quoting 20 C.F.R. § 416.929(c)(3)(i)-(vi)). Further, hypothetical questions to vocational experts must account for medication side effects. *See White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 789-90 (6th Cir. 2009). On remand, the ALJ must determine which medications plaintiff was taking during the relevant time period; make findings as to the nature and extent of these medications' side effects, if any; adjust his findings as appropriate regarding plaintiff's RFC; and incorporate these findings in proper hypothetical questions to the VE.

Second, the RFC evaluation in this case is flawed because the ALJ neglected to make required findings concerning the effect, if any, of plaintiff's obesity on her other impairments and on her RFC. The record contains several notations that plaintiff's body mass index ("BMI") is well over 30,[2] which is the point at which defendant's regulations consider a person to be obese. *See* SSR 02-1p. The ALJ must consider a disability claimant's obesity at all steps of the sequential process. *See id.,* Policy Interpretation ¶ 3. Further,

> [o]besity is a medically determinable impairment that is often associated with disturbance of the musculoskeletal system, and disturbance of this system can be a major cause of disability in individuals with obesity. The combined effects of obesity with musculoskeletal impairments can be greater than the effects of each of the impairments considered separately. Therefore, when determining whether an individual with obesity has a listing-level impairment or combination of impairments, and when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity, adjudicators *must consider* any additional and cumulative effects of obesity.

---

[2] *See, e.g.,* Tr. 305 [BMI 39.52], 308 [BMI 40.15], 407, 688 [BMI 45.62], 887 [ BMI 44.95], 905 [BMI 46.67], 933 [BMI 47.48].

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00Q (emphasis added).

In the present case, the ALJ found that obesity is one of plaintiff's severe impairments (Tr. 14). The ALJ also acknowledged that under SSR 02-1p he must consider the effect of this impairment on plaintiff's other impairments in evaluating her RFC (Tr. 15). While the ALJ stated that "[t]hese considerations have been taken into account," *id.*, he does not explain how he did so. Further, the ALJ clearly erred in stating that "no treating or examining medical source has specifically attributed additional or cumulative limitations to the claimant's obesity," *id.*, as one of plaintiff's treating physicians, Dr. Jawed, plainly stated that "most of her medical conditions are related to obesity including sleep apnea, restless legs, diabetes, hyperlipidemia and chronic lymphedema" (Tr. 387).[3] On remand, the ALJ must make specific findings as to the effect, if any, of plaintiff's obesity on her other impairments. In particular, the ALJ must determine whether and to what extent plaintiff's obesity exacerbates her COPD and her diabetic symptoms, including her neuropathic pain and the edema in her legs and/or diminishes her ability to sit, stand, walk, or concentrate. The ALJ must include any such findings in reevaluating plaintiff's RFC and, as appropriate, in framing revised hypothetical question(s) to the VE.

Third, the RFC evaluation is flawed because the ALJ dismissed plaintiff's bilateral carpal tunnel syndrome ("CTS") as "non-severe" (Tr. 14). The Sixth Circuit has stated that the step-two "severity" requirement serves as a "de minimus" threshold hurdle that is meant to screen out "totally groundless" claims. *Higgs v. Bowen*, 880 F.2d 860, 862–63 (6th Cir. 1988). "[A]n

---

[3] The ALJ later contradicted himself, stating that "[i]t was indicated [by Dr. Jawed at Tr. 387] that most of the claimant's conditions were related to her obesity" (Tr. 19, last para., and Tr. 21, third para.). Nonetheless, the ALJ neglected to make any findings as to the extent to which plaintiff's obesity exacerbates her other impairments, as required by SSR 02-1p.

6

impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education and experience." *Id.* at 862.

In the present case, it was error for the ALJ to dismiss plaintiff's CTS as non-severe. While the ALJ correctly noted that the EMG tests of plaintiff's wrists were interpreted as "electrophysiologically mild" (Tr. 391), the ALJ appears to have overlooked the fact that plaintiff has been prescribed braces for both wrists (Tr. 412, 426, 859). In light of this prescription, combined with plaintiff's testimony that her arm pain is one of the reasons she believes she cannot work (Tr. 42), plaintiff's CTS passes the "de minimus threshold." On remand, the ALJ must include this impairment in reevaluating plaintiff's RFC and putting revised hypothetical questions to the VE.

Fourth, the RFC evaluation in this case is flawed because the ALJ neglected to making any findings as to plaintiff' claimed need to raise her legs to prevent them from swelling. Plaintiff testified that "[i]f I sit too long, my legs start swelling up so I have to elevate them or prop them up" (Tr. 42). The medical records contain several references to edema in plaintiff's legs, including one emergency room visit for this impairment (Tr. 918, 920, 924, 926, 930, 932). On remand, the ALJ must make findings as to the severity of plaintiff's edema, and include his findings in reevaluating plaintiff's RFC and putting revised hypothetical questions to the VE.

Fifth, the RFC evaluation is flawed because the ALJ failed to explain adequately why he discounted plaintiff's hearing testimony and other statements. Plaintiff testified that she can lift at most ten pounds, that she must use a walker and cannot "stand or walk a lot," and that "[i]f I sit too long, my legs start swelling up so I have to elevate them or prop them up" (Tr. 42, 53). If credited, these limitations would be inconsistent with the ALJ's finding that plaintiff can

7

do light work, which assumes an ability to lift up to 20 pounds occasionally and up to ten pounds frequently and the ability to do "a good deal of walking or standing." *See* n.1, *supra.* While the ALJ is not required to accept plaintiff's testimony, his "assessment of a claimant's credibility must be supported by substantial evidence." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

> In the present case, the ALJ found that plaintiff's
>
> general credibility is reduced somewhat by the fact that she has continued to smoke cigarettes against repeated medical advice, despite her chronic obstructive pulmonary disease, and that she has been non-compliant with diabetes medication on several occasions. . . . At the hearing, the claimant denied ever being advised to lose weight. The claimant's failure to follow repeated recommendations by health care providers to lose weight and stop smoking suggests her symptoms are not as severe as she alleges.

(Tr. 21.) These statements do not support the ALJ's adverse credibility findings. Plaintiff testified that she had smoked more heavily in the past and has cut down to ten cigarettes per day (Tr. 46). The fact that she continues to smoke against medical advice does not logically support the conclusion that "her symptoms are not as severe as she alleges," given the indisputable fact that nicotine is a powerfully addictive drug.[4] Nor does the fact that plaintiff has failed to lose weight, contrary to medical advice, logically support the conclusion that her medical problems are less

---

[4] The National Institute on Drug Abuse, a subdepartment within the U.S. Department of Health and Human Services, states that nicotine addiction "is characterized by compulsive drug seeking and abuse, even in the face of negative health consequences. It is well documented that most smokers identify tobacco use as harmful and express a desire to reduce or stop using it, and nearly 35 million of them want to quit each year. Unfortunately, more than 85 percent of those who try to quit on their own relapse, most within a week." https://www.drugabuse.gov/publications/research-reports/tobacco/nicotine-addictive (visited Apr. 11, 2017).

severe than she alleges. Defendant's Policy Interpretation of SSR 02-1p recognizes that "[o]besity is a complex, chronic disease characterized by excessive accumulation of body fat. Obesity is generally the result of a combination of factors (e.g., genetic, environmental, and behavioral)." The ALJ appears to assume that plaintiff could lose weight if she chose to do so, and that by choosing not to do so, her impairments must not be of disabling severity. Neither the premise nor the conclusion is supported by logic, the record, or any citation to authority.[5]

The ALJ's statement that plaintiff's credibility suffers because "she has been non-compliant with diabetes medication on several occasions" is likewise unsupported by the record. The only evidence cited by the ALJ is "Exhibit 11F/97" (Tr. 21, line 2), where Dr. Hanna stated that plaintiff's diabetes "is not controlled . . . she does miss some doses of insulin" (Tr. 907). When questioned about this at the hearing, plaintiff testified that she

> was getting those pens, and I ran out, so I had to call the doctor for insulin. And then they gave me – it's a little glass tube, and I didn't know nothing about it. So I went to the doctor's office, and they had to show me how to use it. But I was only a few days without it. . . . I'd never used one of those needles where you put it in the jar and pull it out.

(Tr. 48.) In his decision, the ALJ did not acknowledge this explanation. On this record, it was entirely unreasonable for the ALJ to discount plaintiff's credibility on the grounds she missed "some doses" of her insulin. Further, the ALJ does not explain why missing some doses of insulin has any bearing on the believability of plaintiff's testimony regarding the nature and severity of her impairments and symptoms.

---

[5] The ALJ's decision to discount plaintiff's credibility on this basis is all the more perplexing given his statement that "no treating or examining medical source has specifically attributed additional or cumulative limitations to the claimant's obesity" (Tr. 15).

9

Nor is the ALJ's adverse credibility finding supported by his statement that "[t]he claimant's reported level of activities of daily living also suggests she retains the ability to perform sustained work activities . . . . She has reported that she drives, prepares meals, dusts, vacuums, and cleans the bathroom, as well as shopping for food" (Tr. 21). Plaintiff testified that she can drive but that she does so only in emergencies; and that she "sit[s] on my walker while I'm cooking," does "a little dusting," cleans her bathroom, and go shopping "once or twice a month" (Tr. 39, 50). She also stated she generally stays at home and "sleep[s] a lot" (Tr. 43, 49). These minimal daily activities do not reasonably support the ALJ's finding that plaintiff is able to work full-time.

In sum, substantial evidence does not support the ALJ's adverse credibility finding. On remand, the ALJ must reassess plaintiff's credibility and, in particular, explain whether and why he accepts or rejects plaintiff's testimony that she can lift at most ten pounds, that her ability to stand and walk is extremely limited, and that she must raise her legs to prevent them from swelling. To the extent the ALJ accepts any of these restrictions, he must reevaluate plaintiff's RFC and put revised hypothetical question(s) to the VE.

Sixth, the ALJ's RFC evaluation is flawed because he failed to explain adequately why he gave "little weight" to the opinions of one of plaintiff's treating physicians, Dr. Hanna. In questionnaire answers dated February 18, 2015, Dr. Hanna indicated, among other things that plaintiff can sit for at most 30 minutes, that she could lift up to 20 pounds occasionally, that she would need to take at least two unscheduled breaks during a workday due to muscle weakness and chronic fatigue, that her symptoms would cause her to be "off task" 15% of the time, and that she would miss more than four days per month due to her impairments or treatment (Tr. 914-17).

Except for the lifting restriction, which he gave "significant weight," the ALJ gave Dr. Hanna's opinions "little weight" because

> [t]he claimant's objective treatment notes do not document a diagnosis of fibromyalgia, or positive trigger points. The basis for the finding that the claimant would be off-task for 15% of the day, and would require unscheduled breaks, is unclear, as such severe limitations are not supported by the claimant's medical records.

(Tr. 21-22.)

This statement of reasons does not comport with the treating physician rule, which requires the ALJ to

> give controlling weight to a treating physician's opinion as to the nature and severity of the claimant's condition as long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2) (language moved to 20 C.F.R. § 404.1527(c)(2) on March 26, 2012). The premise of the rule is that treating physicians have the best detailed and longitudinal perspective on a claimant's condition and impairments and this perspective "cannot be obtained from objective medical findings alone." 20 C.F.R. § 416.927(d)(2) (language moved to 20 C.F.R. § 416.927(c)(2) on March 26, 2012). Even when not controlling, however, the ALJ must consider certain factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability of the physician's conclusions; the specialization of the physician; and any other relevant factors. *Rogers*, 486 F.3d at 242. In all cases, the treating physician's opinion is entitled to great deference even if not controlling. *Id.* The failure to comply with the agency's rules warrants a remand unless it is harmless error. *See Wilson*, 378 F.3d at 545–46.

*Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 723 (6th Cir. 2014). Leaving aside the fibromyalgia, Dr. Hanna also indicated that plaintiff has major depression, peripheral neuropathy, and uncontrolled diabetes. The uncontrolled nature of plaintiff's diabetes is well documented in the

11

record (Tr. 309, 315, 411, 417, 817, 828, 907), as are plaintiff's complaints of dizziness, neuropathic pain, and fatigue. The ALJ erred factually in stating that the basis for Dr. Hanna's limitations is "unclear" and "not supported by the claimant's medical records." On remand, the ALJ must reevaluate Dr. Hanna's opinions and, as appropriate, adjust his RFC assessment of plaintiff and his hypothetical question(s) to the VE.

Finally, in addition to the flaws in the RFC evaluation, discussed above, the ALJ erred in finding that plaintiff can perform the jobs identified by the VE. As noted above, the ALJ found that plaintiff "is able to occasionally balance with the use of a handheld assistive device" and that she "is limited to performing jobs where an individual can use a handheld assistive device at all times when standing" (Tr. 17). The record is replete with references to plaintiff's need to use a walker. Plaintiff's husband reported that plaintiff "has an extremely hard time walking or standing for any period of time" and that she has been prescribed a walker (Tr. 244, 250). Plaintiff reported that her ability to stand and walk are affected by her impairments and that she has been prescribed a walker (Tr. 261). Dr. Jawed prescribed a walker in September 2013 and indicated that plaintiff "[r]eports severe pain in both the legs and feet [and] [f]eels dizzy and has recurrent falls" (Tr. 315). Elsewhere Dr. Jawed noted that plaintiff "[w]alks with the help of walker so physical activity is limited" and that she "has severe and constant pain in her legs and walking difficulty [and] . . . ambulates with the help of a walker" (Tr. 358, 402). Plaintiff testified that she uses her walker "[a]ll the time," that she sits on it while cooking, and that cannot stand without leaning on it (Tr. 42, 46, 50, 52).

From his findings that plaintiff "is able to occasionally balance with the use of a handheld assistive device" and that she "is limited to performing jobs where an individual can use

a handheld assistive device at all times when standing" (Tr. 17), it is apparent that the ALJ accepted the fact that plaintiff uses a walker for support while walking and standing. The VE clarified that the electrical and small parts assembly and inspector/hand packager jobs he identified can be performed sitting or standing, but that no jobs requiring standing could be done by a person who needs to use an assistive device, such as a walker (Tr. 73). This, it would certainly seem, would preclude plaintiff from performing any light-level work, as that exertional level assumes the ability to do a significant amount of standing and walking, *see* n. 1, *supra.* The ALJ did not explain why he found that plaintiff can perform these jobs despite the VE's clarification. On remand, the ALJ must resolve the contradiction between his finding that plaintiff can perform light-level work and the VE's testimony that such work cannot be done by a person who cannot stand unassisted.

For these reasons, the Court concludes that the ALJ's decision in this matter is not supported by substantial evidence. Remanding the matter for an award of benefits would not be appropriate at this time because the record, in its current state, is not such that "proof of disability is overwhelming or . . . proof of disability is strong and evidence to the contrary is lacking." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). Rather, the matter must be remanded so that the record may be further developed to address the deficiencies noted above.

Accordingly,

IT IS ORDERED that defendant's motion for summary judgment is denied.

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment is granted and this matter is remanded for further proceedings as specified above. This is a sentence four remand under § 405(g).

|  |  |
|---|---|
| Dated: April 13, 2017<br>Detroit, Michigan | s/Bernard A. Friedman<br>BERNARD A. FRIEDMAN<br>SENIOR UNITED STATES DISTRICT JUDGE |

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon the counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. Mail addresses disclosed on the Notice of Electronic Filing on April 13, 2017.

s/Teresa McGovern
Deputy Clerk